UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**GABRIEL S. DINDAYAL,**

      **Plaintiff,**

  v.

**ANDREW SAUL,**
**Commissioner of Social Security,**

      **Defendant.**

Case No. 2:18-cv-10885
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Gabriel S. Dindayal for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.    PROCEDURAL HISTORY**

On October 24, 2014, Plaintiff filed an application for Supplemental Security Income, alleging that he has been disabled since September 16, 2014. R. 234–42. The application was denied initially and upon reconsideration. R. 128, 153–55. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 158–60. Administrative Law Judge Leonard Costa ("ALJ") held an initial hearing on December 5, 2016, at which Plaintiff, who was represented by

1

counsel, appeared and testified, as did a vocational expert. R. 50–112. After that hearing, Plaintiff was sent for a consultative orthopedic examination. The ALJ then held a supplemental hearing on June 9, 2017, at which a vocational expert appeared and testified. Plaintiff's counsel–but not Plaintiff–participated in that hearing. R. 40–49. In a decision dated August 28, 2017, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since October 24, 2014, the date on which the application was filed. R. 23–35. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 1, 2018. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On December 4, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[1] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 29. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

---

[1] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

3

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

>supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a federal court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

5

B.     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 35 years old on the date the application was filed. R. 33. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 24, 2014, the application date. R. 25.

At step two, the ALJ found that Plaintiff's status-post right ulna fracture with intramedullary nailing qualified as a severe impairment. R. 26. The ALJ also found that Plaintiff's non-insulin dependent diabetes mellitus, asthma, and adjustment disorder with depressed mood and history of polysubstance abuse were not severe impairments. R. 26–27.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 27–28.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various exertional limitations. R. 28–32. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an administrative assistant and disc jockey. R. 33.

In the alternative, at step five, the ALJ found that a significant number of jobs–*i.e.*,

approximately 20,000 jobs as a sealing machine operator; approximately 10,000 jobs as a bagger; approximately 150,000 jobs as a labeler–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 34. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act since October 24, 2014, the date on which the application was filed. *Id.*

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 25. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 28.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

In 2014, Plaintiff was shot in hip, right arm (Plaintiff's dominant arm), leg, and back. R. 80, 82. During the initial administrative hearing held on December 5, 2016, the ALJ concluded that additional evidence, including an orthopedic consultative examination of the right arm, was necessary. R. 54, 95–97, 111.[2]

On February 2, 2017, Marc Weber, M.D. conducted an orthopedic consultative examination. R. 685–97. In connection with this examination, Dr. Weber prepared a written report, R. 685-87, completed a medical source statement on a preprinted Social Security Administration form, R. 688–94, and completed a two-page, preprinted "Passive Range of

---

[2] As previously noted, the ALJ conducted a supplemental hearing on June 9, 2017, at which additional evidence was adduced, including the testimony of a different vocational expert. R. 42, 44.

Motion Chart," R. 696–97.

In his written report, R. 685-87, Dr. Weber noted that Plaintiff had sustained multiple gunshot wounds in September 2014 and was struck in his right elbow and abdomen. R. 685. Plaintiff underwent open reduction and internal fixation of the right elbow fracture but retained bullet fragments in the right upper extremity and in the left pelvis. *Id.* Plaintiff complained of continuing pain and weakness in the right hand, tingling in the right upper extremity, left-sided back pain, numbness and weakness in the left lower extremity, chronic constipation, loss of coordination, and occasional shortness of breath due to his asthma. *Id.* Plaintiff reported difficulty with typing, and stated that he is able to stand for 15 minutes, sit for 30 minutes, and walk for 15 minutes at a time. *Id.*

Upon examination, Dr. Weber noted that Plaintiff, who was six feet, four inches tall and weighed 158 pounds, was in no apparent distress. R. 686. Dr. Weber noted tenderness upon palpation over the palm of the right hand and atrophy of the muscles of the right hand. *Id.* Plaintiff could not fully extend or flex his fingers or grip with his right hand. *Id.* Muscle strength was reduced at the right elbow on flexion and extension. *Id.* Sensation was decreased to light touch and pinprick in the 4th and 5th digits of the right hand and the right forearm. *Id.* Deep tendon reflexes were 1+ in both upper extremities. *Id.* Range of motion of the elbows was 0–150 degrees flexion and extension bilaterally. *Id.* Range of motion of the wrists was 0–60 on dorsiflexion and 0-60 on palmar flexion bilaterally. *Id.* According to Dr. Weber, Plaintiff

> is able to fully extend the left hand, make a fist and oppose the fingers on the left. He is not able to extend the fingers on the right nor could he make a fist on the right. He is able to oppose the fingers of both hands, although with greater difficulty on the right. He is able to separate papers and lift a pin off the table with the right hand as well, although it is more difficult on the right side. He is able to stand on his heels and his toes. He also performs a squat. He ascends and descends examination table independently and he also removes and puts on his shoes independently. His gait pattern is within normal limits.

9

*Id*. Dr. Weber's impression was chronic right upper extremity pain, sensory deficits, and incoordination following a gunshot wound with apparent nerve injury as well as chronic back pain resulting from a gunshot wound. R. 687.

In addition to this report, Dr. Weber also completed a medical source statement on a preprinted Social Security Administration form, in which he opined on Plaintiff's physical ability to engage in work-related activities. R. 688–94. According to Dr. Weber, Plaintiff could occasionally lift and carry up to 10 pounds as a result of the gunshots and because of weakness and impaired sensation in the right upper extremity, as well as back pain. R. 688. Plaintiff could sit for 30 minutes at a time and stand and walk for 15 minutes at one time for a total of 4 hours sitting and 2 hours standing/walking in an 8-hour workday. R. 689. Although Plaintiff did not need a cane to ambulate, *id*., Plaintiff could never reach overhead, feel, or push/pull with his dominant right hand, but could occasionally reach in other directions, handle, and finger with his right hand. R. 690. Plaintiff could frequently reach overhead with his left hand, and could continuously reach in all other directions, handle, finger, and feel with his left hand, but he could never push/pull with his left hand. *Id*. Dr. Weber further opined that Plaintiff could frequently operate foot controls with both feet. R. 691. According to Dr. Weber, Plaintiff could occasionally climb stairs and ramps and stoop, but could never climb ladders or scaffolds, balance, kneel, crouch, or crawl because of chronic back pain. R. 692. Plaintiff could occasionally tolerate exposure to humidity and wetness and vibrations, but could never tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, dust, odors, fumes, and pulmonary irritants, and extreme cold. R. 693. Plaintiff could tolerate exposure to all levels of noise. *Id*. Dr. Weber identified Plaintiff's reported asthma and sensory loss as support for these assessed limitations. *Id*.

Dr. Weber also opined that Plaintiff was capable of performing activities like shopping; traveling without a companion of assistance, ambulating without using a wheelchair, walker, two canes, or two crutches; he could walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed himself, care for personal hygiene, and sort, handle, and use paper/files. R. 694.

Finally, Dr. Weber opined that Plaintiff's limitations have lasted or would last for twelve consecutive months. *Id*. Dr. Weber signed his name with the titles "M.D., PM+R [Physical Medicine and Rehabilitation]."

Dr. Weber also completed a two-page, preprinted "Passive Range of Motion Chart" developed by the New Jersey Division of Disability Determination Service. R. 696–97. Dr. Weber noted that Plaintiff could extend and flex his right and left elbows 0 to 150 degrees. R. 696. Supination of the right elbow was 70 degrees and the left elbow was 80 degrees. *Id*. Pronation of the right elbow was 60 degrees and the left elbow was 80 degrees. *Id*. Dr. Weber also reported 60-degree dorsiflexion and palmar flexion in the right and left wrists. *Id*. Plaintiff could fully extend and make a fist with his left hand, but not with his right hand. *Id*. Plaintiff had 5/5 grip strength and pinch strength in his left hand, but 3/5 pinch strength in his right hand and Dr. Weber reported "N/A" grip strength in Plaintiff's right hand. *Id*. Plaintiff could oppose fingers in both hands. *Id*. Dr. Weber reported that Plaintiff could separate papers, but doing so was difficult with his right hand. *Id*.

Flexion of the lumbar spine was 70 degrees and extension was 20 degrees. R. 697. Lateral flexion was 20 degrees on the right and left. *Id*. Plaintiff could squat and walk on his heels and toes. *Id*. Dr. Weber noted sensory loss in Plaintiff's right upper extremity. *Id*. Plaintiff

11

had 5/5 muscle strength on the left but 4/5 muscle strength on the right. *Id.*

## V.    DISCUSSION

Plaintiff argues that the ALJ failed to properly consider the physical limitations found by Dr. Weber. *Plaintiff's Moving Brief*, ECF No. 25, pp. 17–28. This failure, Plaintiff goes on to argue, resulted in an RFC that is not supported by substantial evidence.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can frequently lift and/or carry a maximum of ten pounds with the right upper extremity. The claimant can frequently climb ramps and stairs, stoop, kneel, crouch, balance and crawl. He can frequently reach, handle and finger with the right dominant upper extremity, with no limitation of the left

12

upper extremity. He can occasionally push/pull arm controls with the right dominant upper extremity, with no limitation of the left upper extremity. The claimant can have no exposure to extremes in environmental conditions or concentrated pulmonary irritants.

R. 28.

In making his findings, an ALJ must evaluate all record evidence. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter*, 642 F.2d at 705). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209–10 (3d Cir. 2019) ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994));

*Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

>Here, the ALJ summarized Dr. Weber's examination findings and opinions as follows:

>In an assessment from February of 2017, Marc Weber, M.D., an examining source, indicated that the claimant could occasionally lift and carry up to ten pounds (Exhibit 14F). He also indicated that the claimant could sit for four hours out of an eight-hour workday, and stand and/or walk for two hours out of an eight-hour workday. Dr. Weber noted that the claimant could occasionally reach, handle and finger with the right upper extremity, but never overhead reach, feel or push/pull with the right upper extremity. He also noted that the claimant could continuously reach, handle, finger and feel with the left upper extremity, frequently reach overhead with the left upper extremity, and never push/pull with the left upper extremity. Dr. Weber indicated that the claimant could frequently operate foot controls bilaterally. He also indicated that the claimant could occasionally stoop and climb ramps and stairs, and never climb ladders, ropes or scaffolds, balance, kneel, crouch and crawl. He further indicated that the claimant could tolerate occasional exposure to humidity, wetness and vibration, and no exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, extreme cold, dusts, odors, fames, and pulmonary irritants (Exhibit 14F).

R. 32.

>The ALJ also summarized the opinions of the reviewing state agency physicians, Arvind Chopra, M.D., and Mohamed Abbassi, M.D.:

>In assessments from January and March of 2015, Arvind Chopra, M.D., and Mohamed Abbassi, M.D., each a reviewing DDS physician, indicated that the claimant could lift and carry twenty pounds occasionally, and ten pounds frequently (Exhibits 2A, 4A). They also indicated that the claimant could sit for six hours out of an eight-hour workday, and stand and/or walk for six hours out of an eight-hour workday. They further indicated that the claimant could frequently push and/or pull with his right upper extremity. Dr. Chopra and Dr. Abbassi noted that the claimant could occasionally climb ladders, ropes and scaffold, and frequently stoop, kneel, crouch and crawl. They further noted that the claimant had an unlimited ability to climb ramps and stairs and to balance. Dr. Chopra and Dr. Abbassi indicated that the claimant could frequently handle, finger and reach overhead with his right upper extremity (Exhibits 2A 4A).

R. 32. The ALJ weighed the opinions of these three medical professionals, as follows:

> The undersigned gives some weight to the opinions of Dr. Chopra, Dr. Abbassi and Dr. Weber, with greater weight to the opinions of Dr. Chopra and Dr. Abbassi. The limitations assessed by Dr. Chopra and Dr. Abbassi are more consistent with relatively mild right upper extremity abnormalities, and lack of significant left upper extremity and bilateral lower extremity abnormalities. Dr. Chopra and Dr. Abbassi reviewed the medical evidence submitted at the time of their assessments, and records submitted after they prepared their assessment do not describe significant worsening. They provided extensive rationales to support their findings, citing to specific evidence of record, and resolving inconsistencies in the record. They assessed specific functional limitations and abilities consistent with the findings on physical examinations and diagnostic testing, as previously described. The more restrictive limitations assessed by Dr. Weber, particularly with respect to sitting, standing, walking and *left* upper extremity functioning, are not supported by significant medical evidence. As previously discussed, physical examinations and diagnostic testing have not revealed significant *left* upper extremity or bilateral lower extremity abnormalities that would support such limitations. Dr. Weber provided no significant explanation or rationale for such limitations, and his assessment form is primarily mere check marks on a form.

R. 32 (emphasis added). Plaintiff challenges this finding and evaluation, arguing, *inter alia*, that the ALJ's explanation would suggest that he rejected Dr. Weber's opinions only as to the functioning of Plaintiff's left upper extremity, but did not reject Dr. Weber's opinions as to Plaintiff's right upper extremity, which are supported by substantial evidence. Plaintiff also argues that the ALJ mischaracterized and improperly rejected Dr. Weber's opinions based on a check-the-box rationale. *Plaintiff's Moving Brief*, ECF No. 25, pp. 20–28.

The Court finds that a fair reading of the ALJ's opinion and RFC determination makes clear that the ALJ mistakenly referred to Plaintiff's "left" upper extremity instead of "right" upper extremity as he explained the weight assigned to Dr. Weber's opinions. R. 28–32. This error, standing alone, does not warrant remand of the matter. *See Mims v. Berryhill*, No. CV 18-9286, 2019 WL 1326892, at \*5 (D.N.J. Mar. 25, 2019) (affirming ALJ's decision where the Court found "that the ALJ's later written statement stating [the plaintiff] could only sit for two

hours in a day was merely a scrivener's error. It is apparent that the error was merely a typographical error").

However, the Court nevertheless concludes that the ALJ's evaluation of Dr. Weber's opinion and the RFC determination are not supported by substantial evidence. The ALJ explained that he discounted Dr. Weber's opinion because this physician's opined limitations were "not supported by significant medical evidence." R. 32. Specifically, the ALJ stated that "physical examinations and diagnostic testing have not revealed significant left upper extremity or bilateral lower extremity abnormalities that would support" his opined limitations in "sitting, standing, walking and left upper extremity functioning[.]" *Id*. The ALJ further stated that Dr. Weber "provided no significant explanation or rationale for such limitations, and his assessment form is primarily mere check marks on a form." *Id.* Notably, in summarizing Dr. Weber's findings, the ALJ referred only to Dr. Weber's answers on the preprinted medical source statement form. R. 32, 688–94. The ALJ failed entirely to acknowledge Dr. Weber's two and one-half page, typed report, which reflects his findings on his physical examination of Plaintiff and which supports his opinions as to Plaintiff's limitations, at least as it relates to Plaintiff's right upper extremity. R. 685–87. For example, Dr. Weber's specific findings included, *inter alia*, "tenderness upon palpation over the palm of right hand[,]" "atrophy of the right hand muscles[,]" an inability "to fully extend or flex his fingers[,]" an inability to "grip with his right hand[,]" an inability to "extend the fingers on the right . . . [or] make a fist on the right." R. 686. Based on these physical findings, Dr. Weber diagnosed "chronic right upper extremity pain, sensory deficits, and incoordination following a gunshot wound with apparent nerve injury. He also has chronic back pain as a result of a gunshot wound." R. 687. Although Dr. Weber did not repeat all these written findings in support of the limitations identified in the preprinted medical

source statement, *see* R. 688–94, his typewritten report contains findings on clinical examination, R. 685–87, that unquestionably support the limitations in the upper right extremity identified in that medical source statement. The ALJ's statement that Dr. Weber "provided no significant explanation or rationale for such limitations, and his assessment form is primarily mere check marks on a form[,]" R. 32, overlooks or mischaracterizes the medical record in this regard.[3] As previously discussed, an ALJ cannot reject evidence for the wrong reason. *See Sutherland* 785 F. App'x at 928; *Cotter*, 642 F.2d at 706–07. In the case presently before the Court, the Court cannot conclude that substantial evidence supports the ALJ's rejection of Dr. Weber's opinions, particularly where the limitations found by Dr. Weber are inconsistent with the RFC found by the ALJ. *See id.* Finally, the Court notes that while the ALJ assigned "some weight" to Dr. Weber's opinions, it is not clear, in light of the ALJ's RFC determination, which of this doctor's opinions the ALJ credited. R. 28, 688–94.

For all these reasons, this Court concludes that the decision of the Commissioner must be reversed and the matter must be remanded to the Commissioner for further consideration of the opinions of Marc Weber, M.D.[4]

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[3] The ALJ's statement. at R. 30, that Dr. Weber's consultative examination described only "relatively mild abnormalities" further highlights the ALJ's misreading or mischaracterization of Dr. Weber findings and opinions.

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Weber's opinions, the Court does not consider those claims. In addition, on remand, the Court encourages the Commissioner, if he again assigns only "some weight" to this consultative examiner's opinion, to clarify those portions of the opinion that are credited and those portions that are rejected.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 23, 2021                                          *s/Norah McCann King*
                                                     NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE